**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MAURICE D. JOSEPH,

      Petitioner,

v.                                   Case No. 8:16-cv-3415-T-33SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Maurice D. Joseph, a Florida inmate, timely filed a *pro se* amended petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Hillsborough County conviction (Doc. 7). Respondent filed a response (Doc. 19) and Joseph filed a reply (Doc. 29). Upon consideration, the petition is DENIED.

### Procedural History

      Joseph was convicted after a jury trial of lewd or lascivious battery of a child twelve years of age or older but under the age of sixteen years. (Doc. 22, Ex. 1, pp. 4, 44). The state trial court sentenced him to fifteen years in prison. (*Id.*, p. 59). The state appellate court *per curiam* affirmed the conviction and sentence. (Doc. 22, Ex. 4). The state appellate court also *per curiam* affirmed the denial of Joseph's amended motion for

postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Doc. 22, Exs. 7, 11).

## Facts[1]

The victim, J.C., lived with her mother, K.W., in Tampa.  They knew Maurice Joseph from the neighborhood, and he sometimes "hung out" with them at home.   In September 2012, when J.C. was 12 years old, K.W. threw a birthday party for J.C.'s brother.  Joseph, who was 22 years old, came to the party.  Later that evening, K.W. found Joseph and J.C. in J.C.'s brother's bed.  K.W. observed J.C. wearing her bra and panties and Joseph wearing his boxers.  K.W. closed the door and left because she was so shocked that she did not know what to do.  Joseph and J.C. had sex that night while J.C.'s cousin, A.H., was in the room.  After Joseph left, J.C. told her mother what had happened.

Approximately one week later, K.W. reported this incident to police.  Detective Douglas Burkett, Jr., spoke to Joseph outside Joseph's home.  Detective Burkett recorded their conversation, during which Joseph admitted to having had sex with J.C. one time.  Joseph said that he was drunk and that it was "an accident."

## Standard Of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding.  *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

---

[1] The factual summary is based on the trial transcript and appellate briefs.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the judgment and sentence and the denial of postconviction relief without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the

deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Exhaustion Of State Court Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). "If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

**Discussion**

Ground One

Joseph argues that the trial court erred in denying the motion to suppress his statement to Detective Burkett.  He argues that he gave his statement while he was in custody without the benefit of warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).  Joseph claims violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.[2]

If Joseph had been in custody, he would have been entitled to *Miranda* warnings:

> *Miranda* warnings are required only when a defendant is "in custody," meaning that there has been either a formal arrest or a restraint on the defendant's freedom of movement that is of the degree associated with a formal arrest. *See United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006). Whether a person is in custody "depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (citation omitted).  Relevant factors include the location and duration of the questioning, the statements made during the interview, whether the defendant was physically restrained, and whether the defendant was released after questioning. *See Howes v. Fields*, —— U.S. ——, 132 S.Ct. 1181, 1189, 182 L.Ed.2d 17 (2012).
>
> Not all restraints on a person's freedom of movement constitute custody for purposes of *Miranda*. Courts must determine "whether the relevant environment present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at 1190. In making that determination, we have considered whether the circumstances were such that a reasonable person would have "believe[d] that he was utterly at the mercy of the police, away from the protection of any public scrutiny, and had better confess or else." *United States v. Acosta*, 363 F.3d 1141, 1150 (11th Cir. 2004). Because the custody standard is objective, the subjective beliefs of the defendant and the officer as to whether the defendant was free to leave are irrelevant. *See Brown*, 441 F.3d at 1347.

*United States v. Partin*, 634 Fed. App'x 740, 746–47 (11th Cir. 2015).

The state trial court denied Joseph's motion to suppress by concluding, without

---

[2] Joseph's claim that the state court violated his rights under the Florida Constitution is not cognizable on federal habeas review.  *See* 28 U.S.C. § 2254(a); *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983).

further elaboration, that the statement was not the product of a custodial interrogation. (Doc. 22, Ex. 1, p. 101).  Joseph has not shown that the state appellate court's affirmance of this ruling was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of fact.

Detective Burkett testified at the suppression hearing that he contacted Joseph at Joseph's house on December 12, 2012.  (*Id.*, p. 86).  Detective Burkett stated that he had a badge and gun.  (*Id.*, p. 87).  Detective Burkett testified that when Joseph answered the door, Detective Burkett asked if they could talk. (*Id.*).  Detective Burkett testified that they sat on the stoop in front of Joseph's house and that he told Joseph of the allegations and discussed the facts with him.  (*Id.*, pp. 87-88).  Detective Burkett testified that he never placed Joseph in handcuffs, never drew his weapon, never told Joseph that he had to talk, and never told Joseph that he could not leave.  (*Id.*, p. 88).  Detective Burkett wore a recording device that captured the entirety of their conversation.  (*Id.*, p. 88). This recording, as transcribed when published at trial,[3] confirms that Detective Burkett never verbally threatened Joseph or told him he could not leave, and that Joseph never indicated that he felt like he had to talk.  (Doc. 22, Ex. 1b, pp. 203-08).

Joseph does not establish that he was in custody and therefore entitled to receive *Miranda* warnings.  That the interview occurred near Joseph's home suggests that he was not in custody.  *See, e.g., United States v. Brown*, 441 F.3d 1330, 1348 (11th Cir. 2006) (while location is not dispositive, "courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as

---

[3] The recording was not played at the suppression hearing, but was available for the trial judge's consideration in ruling on the motion to suppress.  (Doc. 22, Ex. 1, p. 83).

the suspect's home.") (internal quotation marks and citation omitted). Further, the prosecutor indicated at the suppression hearing that the interview only lasted about six minutes. (Doc. 22, Ex. 1, p. 83).

Additionally, there is no evidence that Detective Burkett coerced Joseph into speaking with him. When Detective Burkett introduced himself as a detective and stated, "I guess there's an allegation that you and her got a relationship going on?" Joseph immediately began talking and answering questions. (Doc. 22, Ex. 1b, pp. 204, 208). And there is no evidence that Detective Burkett displayed force or physically restrained Joseph in any way. Further, Joseph was not arrested following the conversation. Under these circumstances, Joseph does not establish "a restraint on [his] freedom of movement that is of the degree associated with a formal arrest." *See Partin*, 634 Fed. App'x at 746. Joseph does not show that the state appellate court's denial of his trial court error claim was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination.

Joseph also alleges that the trial court erred in denying his motion to suppress because Detective Burkett illegally taped the conversation without Joseph's knowledge, violating his privacy and due process rights. Joseph failed to exhaust this claim because he did not raise it on direct appeal. (Doc. 22, Ex. 2). State procedural rules do not provide for second appeals. *See* Fla. R. App. P. 9.140(b)(3) (a criminal defendant must file his notice of appeal within 30 days of rendition of a written sentence). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. And Joseph implicitly acknowledges the default by arguing in Ground Five that his trial counsel was ineffective in not informing the court that Detective Burkett illegally recorded him. Joseph does not

argue or establish that an exception applies to overcome the default. *See id.* Alternatively, for the same the reasons addressed in Ground Five, Joseph's claim fails on the merits. Joseph is not entitled to relief on Ground One.

Grounds Two Through Five: Ineffective Assistance Of Trial Counsel

Claims of ineffective assistance of counsel are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. To show deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court must consider whether, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Joseph must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

Ground Five

Joseph argues that trial counsel was ineffective in failing to investigate and inform the court that Detective Burkett's use of a hidden recording device to obtain his statement was illegal and violated his rights to due process and privacy. The state court denied this claim:

> Defendant alleges ineffective assistance of counsel due to counsel's failure to investigate Detective Burkett's illegal acts. Specifically, he alleges Detective Burkett illegally obtained his statement. He alleges Detective Burkett arrived at his house to interrogate him. He alleges Detective Burkett recorded the interrogation, but did not advise Defendant that he was being recorded. He alleges he never knew, nor was he informed that it was being recorded. He alleges Detective Burkett used the recorded statement as evidence against him and he was never read his *Miranda* rights. He alleges his counsel failed to inform the Court of the violation. He alleges had his counsel investigated and argued the violation to the Court, the trial would have resulted in a not guilty verdict.

> After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient. However, the Court finds on June 19, 2013, Defendant's counsel Mr. Dalton McKeever III filed "Defendant's motion to suppress statements (no *Miranda* warnings)" seeking to suppress Defendant's statements to Detective Burkett because Defendant's statements were taken in violation of his right against self-incrimination. The Court finds a hearing was held on July 18, 2013, and the Court denied the motion on July 30, 2013, finding that it was not a custodial interrogation. The Court further finds during the trial, prior to Detective Burkett testifying, Defendant's counsel Jaye Duncan renewed the motion to suppress. . . . The Court finds when the State moved to admit the disc

containing Defendant's recorded statements into evidence, Ms. Duncan objected.

Therefore, the Court finds Mr. McKeever did investigate the facts and circumstances by which Detective Burkett obtained Defendant's recorded statement and filed a motion to suppress which was heard by the Court and denied. The Court further finds Ms. Duncan renewed the motion to suppress during the trial, but the Court denied the motion. Consequently, the Court finds Defendant cannot prove that Mr. McKeever acted deficiently or any resulting prejudice when Mr. McKeever investigated the facts and circumstances by which Detective Burkett obtained Defendant's recorded statement and filed a motion to suppress based on a *Miranda* violation, thereby informing the Court of the alleged violation, but despite the filing of motion to suppress, after hearing the evidence, the Court denied the motion to suppress prior to trial and Ms. Duncan's renewed motion to suppress during the trial. As such, no relief is warranted upon claim four.

(Doc. 22, Ex. 7, pp. 94-96) (court's record citations and footnote omitted).

The state court concluded that counsel was not ineffective for failing to raise this matter. Joseph does not meet his burden under § 2254(d) of showing that the state court's determination involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination,[4] as he has not established that Detective Burkett's use of the tape recorder provided any meritorious basis for counsel to object.

First, Joseph claims that counsel should have argued that Detective Burkett's actions violated "due process and right to privacy" under the Fourth, Fifth, Sixth, and Fourteenth Amendments. (Doc. 7, p. 14). However, Joseph does not show any violations of his federal rights to due process or to privacy. A conversation is "within the Fourth Amendment's protections," and "the use of electronic devices to capture it [is] a 'search' within the meaning of the Amendment." *Berger v. New York*, 388 U.S. 41, 51 (1967). But

---

[4] Even assuming that *de novo* review is appropriate to the extent the state court's analysis focused on the lack of *Miranda* warnings as a basis for suppression, *see Davis v. Sec'y, Dep t of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003), Joseph is not entitled to relief for the same reasons discussed in the body of this Order.

Joseph fails to establish a violation of his Fourth Amendment rights because he does not show a reasonable expectation of privacy in his conversation with Detective Burkett.

> In *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), [the Supreme Court] said that "the Fourth Amendment protects people, not places," and found a violation in attachment of an eavesdropping device to a public telephone booth. Our later cases have applied the analysis of Justice Harlan's concurrence in that case, which said that a violation occurs when government officers violate a person's "reasonable expectation of privacy," *id.*, at 360, 88 S.Ct. 507. *See, e.g., Bond v. United States*, 529 U.S. 334, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000); *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

*United States v. Jones*, 565 U.S. 400, 406 (2012).

In other words, the critical inquiry in a Fourth Amendment analysis "is whether the government's activities in electronically listening to and recording the conversations violated privacy upon which [the participants] justifiably relied." *United States v. Shields*, 675 F.2d 1152, 1158 (11th Cir. 1982). An expectation of privacy is reasonable if it "has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978).

Joseph claims that he had a reasonable expectation of privacy because he was at home with the door closed and locked when Detective Burkett arrived, and because he and Detective Burkett spoke within the curtilage of his home. (Doc. 29, pp. 34-36).[5] However, Joseph's argument does not turn on any physical intrusion of his home or its curtilage, but on the alleged right to privacy in the conversation itself. *See, e.g., Padgett v. Donald*, 401

---

[5] *See Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("We . . . regard the area 'immediately surrounding and associated with the home'–what our cases call the curtilage–as 'part of the home itself for Fourth Amendment purposes.'" (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984))).

F.3d 1273, 1280 (11th Cir. 2005) (stating that the right to privacy recognized by the United States Supreme Court protects "an individual's interest in *avoiding disclosure* of certain personal matters.") (emphasis added).   And under the circumstances, Joseph does not show that he had a reasonable expectation of privacy in the conversation.   Detective Burkett had a badge and gun, identified himself as a detective, and immediately informed Joseph of an allegation that he and the victim had "a relationship going on."  Even though Joseph was not in custody, Joseph does not show that he had any reasonable expectation of privacy when he chose to speak to Detective Burkett about the allegations against him. *Cf. Maryland v. King*, 569 U.S. 435, 462 (2013) (stating that a detainee necessarily has a diminished expectation of privacy).

In his reply, Joseph elaborates on his Fifth Amendment claim by stating that counsel should have argued that Detective Burkett's "failure to advise the Petitioner of the privilege against self-incrimination" violated his rights.  (Doc. 29, p. 32). But as addressed in Ground One, counsel did argue that Joseph's statement should be suppressed because the statement was made while in custody without *Miranda* warnings.[6]

Also in his reply, Joseph for the first time contends that counsel should have argued that Detective Burkett violated federal statutes concerning the interception of oral communications.  Joseph is prohibited from bringing new claims in his reply.  *See Timson*

---

[6] Joseph may argue that counsel should have more expressly framed the Fifth Amendment question as one involving privacy.  As addressed in Ground One, however, Joseph fails to show a Fifth Amendment violation.  He was not compelled into making any incriminating statements.  *See, e.g., Andresen v. Maryland*, 427 U.S. 463, 477 (1976) ("[U]nless incriminating testimony is 'compelled,' any invasion of privacy is outside the scope of the Fifth Amendment's protection."); *Fisher v. United States*, 425 U.S. 391, 399, 401 (1976) ("[T]he [Supreme] Court has never on any ground, personal privacy included, applied the Fifth Amendment to prevent the otherwise proper acquisition or use of evidence which, in the Court's view, did not involve compelled testimonial self-incrimination of some sort. . . . We adhere to the view that the Fifth Amendment protects against 'compelled self-incrimination, not (the disclosure of) private information.'" (quoting *United States v. Nobles*, 422 U.S. 225, 233 n.7 (1975))).

*v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("We do not address arguments raised for the first time in a *pro se* litigant's reply brief. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003). Timson, thus, has abandoned this issue."). Further, this claim is unexhausted because Joseph did not raise it in his amended postconviction motion. (Doc. 22, Ex. 7, pp. 30-32). When a federal habeas petition alleges different supporting facts for a claim of ineffective assistance, the petitioner has not fairly presented his federal claim to the state court. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts . . . or that a somewhat similar state-law claim was made. . . . [T]he habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim."); *Weeks v. Jones*, 26 F.3d 1030, 1044 (11th Cir. 1994) ("[P]resentation of *some* ineffective instances in state court does not preserve in federal court *other or all* instances of ineffective assistance that were not presented in state court claims.") (emphasis in original); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal habeas petition that the state court has not evaluated previously."). Because Joseph cannot return to state court to present this claim in an untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), it is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Joseph does not argue or establish the applicability of an exception to excuse the default.

Next, Joseph claims, as he did in his postconviction motion, that counsel should have argued that Detective Burkett violated his rights to due process and privacy under

Article I, Sections 9, 12, and 23 of the Florida Constitution.[7]  But Joseph does not show that counsel was ineffective in not making this argument because he fails to show a meritorious due process or privacy claim.  While Article I, Section 12 protects against "unreasonable searches and seizures, and against the unreasonable interception of private communications by any means," that section is also "construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court."  As addressed above, Joseph fails to establish a meritorious Fourth Amendment basis upon which counsel should have challenged the recording.  Nor does Joseph show that counsel was ineffective in failing to argue that Detective Burkett violated Joseph's right to privacy under Article I, Section 23 of the Florida Constitution.  "[P]ortions of chapter 934 authorizing the interception of wire or oral communications are statutory exceptions to the federal and state constitutional right of privacy."  *Copeland v. State*, 435 So.2d 842, 844-45 (Fla. 2d DCA 1983) (citing *In re Grand Jury Investigation*, 287 So.2d 43 (Fla. 1973)).  Section 934.03(2)(c), Fla. Stat., provides that "it is lawful under this section . . . for an investigative or law enforcement officer . . . to intercept a wire, oral, or electronic communication when such person is a party to the communication . . . and the purpose of such interception is to obtain evidence of a criminal act."  Accordingly, Detective Burkett's actions were authorized.

And even assuming this statutory exception did not apply, Joseph still fails to show that counsel could have made a meritorious claim that the recording violated his right to

---

[7] Article I, Section 9 provides that "no person shall be deprived of life, liberty or property without due process of law . . . or be compelled in any criminal matter to be a witness against onself."  Art. I, § 9, Fla. Const.  Article I, Section 12 addresses searches and seizures, and Article I, Section 23 expressly sets out an individual's right to privacy.

privacy under the Florida Constitution.

> The Florida Supreme Court has adopted a test to assess the claim of an article I, section 23 privacy violation: First, courts must determine whether the individual possesses a legitimate expectation of privacy in the information or subject at issue. *Winfield* [v. Div. of Pari-Mutuel Wagering], 477 So. 2d [544,] 547 [(Fla. 1985)]. If so, the burden shifts to the State to show (a) that there is a compelling state interest warranting the intrusion into the individual's privacy and (b) that the intrusion is accomplished by the least intrusive means. *Id.*

*State v. Tamulonis*, 39 So.3d 524, 528 (Fla. 2d DCA 2010).

Although Florida's constitutional guarantee of privacy is broader than the federal right to privacy, *see Mozo v. State*, 632 So.2d 623, 632-33 (Fla. 4th DCA 1994), Joseph fails to show that he had a legitimate expectation of privacy in his conversation with Detective Burkett. Again, Joseph knowingly spoke to a detective about allegations of his criminal activity. *Cf. Davis v. State*, 121 So.3d 462, 485 (Fla. 2013) (individuals do not have an expectation of privacy while in police custody). Further, Joseph does not allege that Detective Burkett did or said anything make him believe their conversation would be private. *See id.* (under Florida law, conversations that might otherwise be subject to disclosure may be protected "when law enforcement deliberately fosters an expectation of privacy." (citing *Allen v. State*, 636 So.2d 494, 497 (Fla. 1994))).

Alternatively, even if Joseph established a legitimate expectation to privacy, he fails to show that the State could not have established that its intrusion satisfied a compelling state interest and that the brief use of a recording device was the least intrusive means available to law enforcement to conduct the investigation. *See Shaktman v. State*, 553 So.2d 148, 152 (Fla. 1989) ("[A] legitimate, ongoing criminal investigation satisfies the compelling state interest test when it demonstrates a clear connection between the illegal

activity and the person whose privacy would be violated."). Accordingly, any objection to the recording as improperly obtained under Joseph's right to privacy would have failed. "[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

In his reply, Joseph for the first time claims that counsel also should have argued that Detective Burkett violated numerous provisions of Chapter 934, Fla. Stat., governing security and surveillance of communications. Again, Joseph is prohibited from raising a new claim in his reply. *See Timson*, 518 F.3d at 874. Further, the claim is unexhausted because he did not present this particular factual instance of ineffective assistance in state court. (Doc. 22, Ex. 7, pp. 30-32). Joseph does not show that an exception applies to overcome the resulting procedural default. *See Smith*, 256 F.3d at 1138.

As Joseph does not show that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts, he is not entitled to relief on Ground Five.

Ground Two

Joseph argues that trial counsel was ineffective in failing to impeach the victim's mother, K.W., with her prior inconsistent statements. He claims that K.W. made inconsistent statements about: (1) whether she knew Joseph was coming to the house; (2) the circumstances under which she entered the bedroom, and whether she saw J.C. and Joseph sleeping in bed while clothed; (3) whether she ever told Joseph to leave; (4) whether J.C.'s cousin, A.H. was present in the room, and if so, what A.H. was doing; and (5) whether she ever witnessed a sexual act. In support of his claims, he alleges that K.W. admitted she had the opportunity to talk to J.C. about the case.

The state court addressed the alleged inconsistencies, and denied Joseph's ineffective assistance claim:

> [Joseph] alleges his counsel failed to impeach [K.W.] on her inconsistent statements, thereby allowing her to testify to things she already admitted she never witnessed. He alleges she was able to prepare for trial by talking to the victim [J.C.] about the facts of the case, thereby changing her statements between the preparation of the police report, her deposition testimony, and her trial testimony. He alleges the jurors heard [K.W.'s] testimony, which was similar to [J.C.'s] testimony, but not similar to her own statements to the police or her deposition testimony. He alleges had his counsel tried to impeach her, he would not have been convicted and he would have been found not guilty.
>
> After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient. However, the Court finds Defendant cannot prove prejudice. Specifically, the Court finds that during the trial, Detective Douglas Burkett, Jr. testified. The Court finds Detective Burkett testified that he interviewed Defendant and during that recorded interview, Defendant admitted to having sex with victim [J.C.]. A disc containing the recorded interview was admitted into evidence as State's exhibit 1 and published for the jury. The Court finds during that recorded interview, Defendant admitted to having sex with [J.C.] one time.
>
> The Court finds the jury was instructed that to prove the crime of lewd or lascivious battery, the State must prove beyond a reasonable doubt that J.C. was twelve years of age of older but under the age of sixteen and Maurice Joseph committed an act with J.C. in which the sexual organ or penis of Maurice Joseph penetrated or had union with the vagina of J.C. The Court finds it was undisputed that J.C. was twelve years of age or older but under the age of sixteen. Therefore, the only other fact to be proven was that Defendant committed an act with J.C. in which his sexual organ or penis penetrated or had union with her vagina. The Court finds based on Defendant's recorded admission to Detective Burkett that he had sex with J.C. once, the jury had sufficient evidence to find Defendant guilty of lewd or lascivious battery whereby Defendant's penis did penetrate the victim's vagina. Consequently, the Court finds Defendant cannot prove how his counsel's alleged failure to impeach [K.W.] with her inconsistent statements resulted in prejudice when even if his counsel had impeached [K.W.] with the alleged inconsistent statements, it would not have changed the outcome of the trial based on Detective Burkett's testimony and Defendant's recorded admission that he had sex with the victim one time. As such, no relief is warranted upon claim one.

(Doc. 22, Ex. 7, pp. 88-91) (court's record citations omitted).

The state court did not unreasonably apply *Strickland*'s prejudice prong in denying this claim. Detective Burkett's testimony that Joseph acknowledged having sex with J.C. was corroborated by the tape of Joseph's statement. (Doc. 22, Ex. 1b, pp. 204-09). In addition, J.C. testified that Joseph's penis penetrated her vagina. (Doc. 22, Ex. 1a, p. 145). In light of this evidence, Joseph has not shown a reasonable probability that the outcome would have been different had counsel impeached K.W. with the identified prior inconsistent statements, which did not involve the elements of lewd or lascivious battery that the State was required to prove. As Joseph has not demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Two.

Ground Three

Joseph contends that trial counsel was ineffective in failing to impeach J.C. with her prior inconsistent statements. He claims J.C. made inconsistent statements concerning: (1) whether Joseph snuck into the house or whether her mother knew he was there; (2) the circumstances under which her mother entered the room and whether her mother's friend was present; (3) how many times she and Joseph had sex; (4) whether they were having sex when her mother entered the bedroom;[8] (5) whether A.H. was present in the room, and if so, what she was doing and when she left; and (6) whether Joseph was the first person she had sex with.

---

[8] Joseph did not raise the fourth point in his amended postconviction motion. (Doc. 22, Ex. 7, pp. 25-27). Accordingly, this aspect of his claim is unexhausted and is now procedurally defaulted. *See Smith,* 256 F.3d at 1138. Alternatively, for the same reasons addressed in the discussion of Ground Three, Joseph does not show prejudice as a result of counsel's failure to impeach J.C. with her allegedly inconsistent statements on this point.

The state court denied this claim. After discussing the claim and again addressing Detective Burkett's testimony and Joseph's recorded statement, the state court found:

> Defendant cannot prove how his counsel's alleged failure to impeach victim [J.C.] with her inconsistent statements resulted in prejudice when even if his counsel had impeached [J.C.] with the alleged inconsistent statements, it would not have changed the outcome of the trial based on Detective Burkett's testimony and Defendant's recorded admission that he had sex with the victim one time. As such, no relief is warranted upon claim two.

(Doc. 22, Ex. 7, p. 92).

Joseph fails to show entitlement to relief because he has not shown prejudice as a result of counsel's failure to impeach J.C. As the state court noted, the State presented evidence that Joseph acknowledged having sex with J.C., and even if J.C. made other prior inconsistent statements, there is no evidence that she was inconsistent in her statement that Joseph penetrated her vagina with his penis. Accordingly, Joseph does not establish that the state court's determination involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact. Joseph is not entitled to relief on Ground Three.

Ground Four

Joseph argues that trial counsel was ineffective in failing to call Officer Alicia Brooks to "cast doubt" on the State's case. (Doc. 7, p. 11). Officer Brooks prepared police reports after interviewing J.C. and K.W. Joseph claims that Officer Brooks would have testified that J.C. and K.W. in fact made the statements contained in the reports, which, he claims, were inconsistent with their trial testimonies. Therefore, he argues, Officer Brooks's testimony would have proven that the witnesses made prior inconsistent statements. The state court denied this claim. The court addressed Joseph's admission to having sex with J.C., and

found that Joseph failed to establish prejudice:

> The Court finds based on Defendant's recorded admission to Detective Burkett that he had sex with J.C. once, the jury had sufficient evidence to find Defendant guilty of lewd or lascivious battery whereby Defendant's penis did penetrate the victim's vagina. Consequently, the Court finds Defendant cannot prove how his counsel's alleged failure to call and depose Police Officer Alicia Brooks resulted in prejudice when even if his counsel had called and deposed Officer Brooks and Officer Brooks testified as Defendant alleges, it would not have changed the outcome of the trial based on Detective Burkett's testimony and Defendant's recorded admission that he had sex with the victim one time. As such, no relief is warranted upon claim three.

(Doc. 22, Ex. 7, p. 94).

Joseph's claim is too speculative to warrant federal habeas relief because he has not presented evidence showing that Officer Brooks would have testified as he contends. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985))); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

Further, in light of evidence showing that Joseph conceded to having sex with J.C., as well as J.C.'s testimony, he does not establish that he suffered prejudice as a result of counsel's failure to call Officer Brooks. Because Joseph has not shown that the state court unreasonably applied *Strickland*'s prejudice prong or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Four.

Additional Claim In Joseph's Reply

In his reply, Joseph argues that he is entitled to relief based on the cumulative effect of counsel's alleged errors. (Doc. 29, p. 51). As addressed, Joseph may not bring a new claim in his reply. *See Timson*, 518 F.3d at 874. Additionally, this claim is unexhausted because Joseph did not raise it in his amended postconviction motion (Doc. 22, Ex. 7, pp. 19-34), and is now procedurally defaulted. *See Smith*, 256 F.3d at 1138. Alternatively, because Joseph has not established any instances of ineffective assistance, he fails to show entitlement to relief on his cumulative error claim. *See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal.").

Accordingly, it is **ORDERED** that Joseph's amended petition (Doc. 7) is **DENIED**. The Clerk is directed to enter judgment against Joseph and to close this case.

**Certificate Of Appealability And**
**Leave To Appeal *In Forma Pauperis* Denied**

It is **ORDERED** that Joseph is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Joseph "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S.

322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Joseph has not made the requisite showing. Because Joseph is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on September 10, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Maurice D. Joseph
Counsel of Record